UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05-CV-137

LEON GRIDER and ANNA MAE GRIDER                                    PLAINTIFFS

v.

CITY OF RUSSELL SPRINGS, BRIAN WALTERS,
CARLA GRIDER, JOE MICHAEL IRVIN,
SCOTT HAMMOND, and JAMIE ROGERS                                    DEFENDANTS

**MEMORANDUM OPINION**

Defendant Scott Hammond ("Hammond") filed a Motion to Compel discovery of certain videotapes from the Plaintiff's in this matter (Docket # 25). Hammond then moved the Court to hold his Motion in abeyance until further notice (Docket # 26), and the Court agreed to hold the Motion in abeyance (Docket #27). Hammond has now moved the Court to remove the Motion from abeyance (Docket # 32) and again seeks to compel discovery from Plaintiffs. Plaintiffs did not timely object. Defendants Carla Grider, Joe Michael Irvin, and Jamie Rogers filed a Motion to Compel discovery in the form of responses to deposition questions from witness James Faller, claiming that he abused his assertion of attorney-client and work product privileges (Docket # 38). Subsequently, Hammond filed another Motion to Compel and for Sanctions to obtain discovery of certain notes and journals from Plaintiffs, claiming that Plaintiffs inappropriately asserted the attorney-client privilege and work product doctrine (Docket # 43).

Plaintiffs filed a Motion to Stay discovery in this matter or alternatively a Motion to Hold in Abeyance the Motions to Compel during the resolution of a criminal charges against Leon Grider related to the subject matter in this suit (Docket # 35). Defendants Irvin, Rogers, and

1

Carla Grider responded to the Motion to Stay (Docket # 39), and Defendants City of Russell Springs and Brian Walters also responded to the Motion to Stay (Docket # 40). The Court now GRANTS the Plaintiffs' Motion to Stay Proceedings pending the resolution of Leon Grider's criminal charges. Therefore, the Defendants' Motions to Compel are VACATED until this suit is resumed in the hope that witnesses and Plaintiff's will be more forthcoming after the resolution of the criminal suit. Defendants are granted leave to refile their Motions to Compel if so needed when discovery for this proceeding is resumed.

## BACKGROUND

This matter arises out of Plaintiffs' claims in defamation, interference with right to contract, intentional infliction of emotional distress, abuse of conduct, and other actions pursuant to 42 U.S.C. § 1983. The events leading to these claims relate to other lawsuits pending which involve Leon Grider. The facts which the Griders contend support their claims against the Defendants named in this action relate specifically to investigations and actions taken by Defendants to enforce the laws of the Commonwealth which eventually led to the indictment of Leon Grider on several felony counts. Soon after the filing of this suit, Leon Grider and James Faller, a witness in this case, filed another civil suit in this Court against many of the same defendants, alleging many claims similar or identical to those present in this suit. These three suits are intertwined such that most evidence relevant in this matter is also discoverable in the other two related cases.

As the other two suits progress, Defendants have pursued discovery in this case. Plaintiffs have refused to present certain documents requested in Defendants' investigation as they claim the documents are protected by various privileges. Defendants have also experienced

difficulty obtaining certain videotapes relevant to this matter because the tapes are being reviewed or held by Plaintiffs' attorneys. Further, Defendants are unable to obtain information from James Faller, a key witness in this matter, because he asserts attorney-client privilege and work product privilege, both on his own behalf and in his capacity as a representative of either Plaintiffs or Plaintiffs' attorney.

In Plaintiffs' Motion to Stay this Proceeding, they assert that various issues regarding Leon Grider's Fifth Amendment right against self-incrimination, Anna Mae Grider's spousal privilege relating to Leon Grider's criminal indictments, and general matters of attorney-client privilege will arise in any continued discovery. According to Plaintiffs, many of these constraints on discovery will be alleviated at the conclusion of Leon Grider's criminal trial. Therefore, they request that any discovery be held in abeyance until the conclusion of the state criminal trial to ease discovery in this matter. Defendants counter that, since the Plaintiffs have chosen to bring this action, they should not be allowed to hide behind various privileges to limit Defendants' discovery. Defendants also point out that Plaintiffs' attorney-client privilege and work-product claims will not dissolve at the conclusion of the criminal trial and claim that Plaintiff's Fifth Amendment and spousal privileges will continue to apply as well.

## STANDARD

> In determining whether to grant a stay, this Court considers (1) the likelihood that the party seeking the stay will prevail on the merits, (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay.

*In re Lott*, 139 Fed. Appx. 658, 660 (6th Cir. 2005) (citing *Grutter v. Bollinger*, 247 F.3d 631, 632, (6th Cir. 2001); *Michigan Coal. of Radioactive Material Users,*

*Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)) (addressing a stay of discovery in light of the assertion of attorney-client privilege and work-product doctrine).

In order to determine the likelihood that the Plaintiffs will succeed in their claims of privilege, the Court must examine the standards for various privileges. Plaintiffs may assert the attorney client privilege where

> (1) legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at this instance *permanently* protected, (7) from disclosure by himself or the legal advisor, (8) except the protection be waived.
> *U.S. ex rel. Burns v. A. D. Roe Co., Inc.*, 904 F.Supp. 592, 594 (W.D.Ky. 1995)

(citing *U.S. v. Goldfarb,* 328 F.2d 280, 281 (6th Cir. 1964) (emphasis added).

Plaintiffs may assert the work product doctrine, as codified in Federal Rule of Civil Procedure 26(b)(3).

> [A] party may obtain discovery of documents and tangible things otherwise discoverable... and prepared in anticipation of litigation or for trial by or for another party... only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means... In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.
> FED. R. CIV. PRO. 26(b)(3).

Plaintiff Leon Grider might assert his Fifth Amendment right against self-incrimination if the Court decides that his silence is justified by the possibility that the testimony might support criminal claims brought against him. Although the Fifth Amendment states that the privilege against self-incrimination applies in criminal cases, the privilege is also available in civil cases

where the person asserting the privilege might implicate himself in criminal activity by testifying. *In re Gault*, 387 U.S. 1, 18 (1967).  The Fifth Amendment no longer protects a defendant from testifying when he has been fully tried on any applicable criminal charges.  *See United States v. Smith*, 245 F.3d 538, 542 (6th Cir. 2001)(quoting *Mitchell v. United States*, 526 U.S. 314, 326 (1999) ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege.  We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.  If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.")).

     Lastly, Plaintiff Anna Mae Grider might assert either of two spousal privileges to avoid criminal or civil liability for her husband Leon.  Federal common law recognizes the anti-marital immunity.[1]  *Trammel v. United States*, 445 U.S. 40 (1980).  The anti-marital immunity applies only to criminal cases.  *See United States v. George*, 444 F.2d 310, 313 (6th Cir. 1971); *see also In re Grand Jury Proceedings (86-2)*, 640 F.Supp. 988, 989 (E.D. Mich. 1986) (citing *United States v. Anthony*, 476 F.2d 313,315 (5th Cir. 1973)).  Therefore, it is not applicable here.  Federal common law also recognizes the confidential communications privilege.  To assert the confidential communications privilege, a person must show (i) that the communications were made in confidence (ii) that the communications were made between husband and wife (iii) and that the couple's marriage was legally recognized at the time the communications were made.  *United States v. Porter*, 986 F.3d 1014, 1018 (6th Cir. 1993).  All communications between

---

[1] This privilege is also commonly referred to as the "testimonial privilege" or simply as the marital privilege.  *United States v. Byrd,* 750 F.2d 585, 590 (7th Cir. 1984).

5

spouses are presumed to be confidential, but this presumption may be rebutted by a showing that the circumstances or type of communication do not indicate confidentiality. *Pereira v. United States,* 347 U.S. 1, 6 (1954); *Byrd,* 750 F.2d 590; *Unites States v. Singleton,* 260 F.3d 1295, 1301 (11th Cir. 2001). Either spouse may assert the confidential communications privilege, not just the testifying spouse. *United States v. Sims*, 755 F.2d 1239, 1240 (6th Cir. 1985).

## ANALYSIS

The Court agrees with Defendants that the attorney-client privilege, work-product privilege, and spousal privilege asserted by Plaintiffs will be no less applicable at the conclusion of the Leon Grider's criminal trial that they are now. Therefore, a stay is not appropriate on those bases. However, Leon Grider will no longer be able to assert the privilege against self-incrimination at the conclusion of his criminal trial. The Court now considers whether a stay would be appropriate on that basis.

The Court first determines whether it is likely that Leon Grider will prevail in this matter on the merits. The Court finds that Leon Grider's criminal charges are inextricably factually intertwined with relevant evidence in this case. It is likely that some of the testimony or evidence related to this case might implicate or suggest his involvement with criminal activity for which his is or may be prosecuted. Therefore, the Court finds it likely that Leon Grider might successfully assert his Fifth Amendment rights to avoid testifying to certain matters.

Second, the Court considers the likelihood that the Plaintiffs will be irreparably harmed absent a stay. As the Defendants suggest, if the Plaintiffs are unable to fully present their evidence because of claims of privilege affected other cases, the Court may rule that the Plaintiffs' case is unsupported and grant summary judgment in favor of the Defendants. As this

would be a judgment on the merits, the Plaintiffs would permanently lose any potentially meritorious claims asserted in this action.  A stay might alleviate this irreparable harm to Plaintiffs as they may be able to present further evidence in support of their case in any discovery following the disposition of Leon Grider's criminal trial.

Next, the Court considers Defendants' claims that they will be harmed if the Court stays discovery in this matter.  Defendants state that Plaintiffs' request for a stay of a lawsuit they initiated unfairly leaves Defendants entangled in a lawsuit for a longer period of time.  Particularly, Defendants claim they are prejudiced by delaying discovery because "as time passes, memories fade and witnesses can be unavailable for numerous reasons."  The Court acknowledges that staleness of evidence is a legitimate concern in delaying discovery.

Lastly, the Court considers the public interest in granting the stay.  The public interests in judicial economy and fully informed trials are at interest here.  Judicial economy would be promoted by granting the stay in that the parties might obtain discovery more easily and without the Court's intervention after Leon Grider's criminal trial has concluded.  However, judicial economy might also be hindered in that the case would be a lingering issue on the docket for a longer period of time.  Granting the stay would promote the public interest in fully informed trials by releasing more relevant evidence to the factfinder.

The Court has considered Defendants' concerns that they will be prejudiced by a stay in this matter.  However, the continued litigation of the issues in this matter should help to preserve witnesses' memories and further develop the relevant evidence.  While it is possible that witnesses may become unavailable as time passes during the stay of discovery, the Court balances this concern with the improved quality of the trial of this matter when fuller evidence is

available.  The Court prefers not to make the Plaintiffs choose between pursuing civil claims and asserting Fifth Amendment rights.  Accordingly, the Court finds that a stay of discovery is appropriate in this matter.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for a Stay of Discovery until the conclusion of Leon Griders' criminal trials in Kentucky state courts for related matters. The Court also VACATES all Defendants' Motions to Compel Discovery and for Sanctions pending at this time.