**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05-CV-137**

**LEON GRIDER and ANNA MAE GRIDER**   **PLAINTIFF**

v.

**CITY OF RUSSELL SPRINGS, BRIAN WALTERS,
CARLA GRIDER, JOE MICHAEL IRVIN,
SCOTT HAMMOND, and JAMIE ROGERS**   **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Scott Hammond's Motion to Compel and for Sanctions (Docket #49). Interested Party James S. Faller, II has responded (Docket #63). Defendant has replied (Docket #65). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiffs Leon and Anna Mae Grider have sued Defendants for defamation, interference with the right to contract, intentional infliction of emotional distress, abuse of conduct, and violations of 42 U.S.C. §§ 1983 and 1985. This case was initiated by the Griders in 2005. The deposition of James S. Faller II ("Faller") was taken on August 28, 2006, as part of the parties' discovery process. Following Faller's deposition, Defendants filed a motion to compel, claiming Faller had wrongly asserted several objections and abused his privileges. Plaintiffs then filed a motion to stay discovery pending the resolution of criminal charges against Leon Grider related to the subject matter of this civil action. The Court granted that motion on November 17, 2006. The Court also vacated the pending motions to compel.

The Court held a telephone conference on February 25, 2010, in which the parties informed the Court that Leon Grider's criminal charges would soon be resolved. Accordingly,

the Court lifted the stay in this case, and a new scheduling order was entered on April 27, 2010. On August 10, 2010, Defendant Scott Hammond filed the present motion to compel and motion for sanctions based on Faller's August 28, 2006, deposition. The Court now considers this motion.

**STANDARD**

Determining "the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. Pro. 37(a)(1). In doing so, "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Motions to compel discovery responses are authorized where a party fails to answer a question asked under Rule 30 or 31. Fed. R. Civ. Pro. 37(a)(3)(B)(I).

Rule 30 permits a deponent to object during a deposition, but "the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). An objection must be "nonargumentative and nonsuggestive." *Id.* A deponent may choose not to respond "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* Under Rule 30(d)(3), a deponent may move to terminate or limit the deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent . . . ." Fed. R. Civ. P. 30(d)(3)(A).

**DISCUSSION**

During his deposition, Faller asserts three objections as bases for not answering several

questions: (1) relevance; (2) Fifth Amendment; and (3) attorney-client privilege and/or work product.

**I.      Relevance**

Faller objects to several questions on the basis of relevance, primarily in regards to his employment with British Ceramic Tile.  As evidenced by Rule 30, a deponent is required to continue his testimony over objection unless he has asserted a privilege, is enforcing a limitation ordered by the court, or to present a motion to terminate under Rule 30(d)(3).  Fed. R. Civ. P. 30(c)(2).  Objecting on the basis of relevance does not constitute one of these exceptions.  "As a general rule, if counsel has an objection to the deposition question, he should (1) assert the nature of the objection and, thereafter, allow the deponent to respond or (2) affirmatively act to terminate or limit the examination pursuant to Rule 30(d)." *In re Air Crash Disaster*, 130 F.R.D. 627, 629 (E.D. Mich. 1989).

"[O]bjections on grounds of relevancy . . . [have] no place in discovery unless the questioning enters the realm of harassment or embarrassment." *Wright v. Firestone Tire and Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982).  As there is no evidence of harassment or embarrassment, Faller was under a duty to continue testifying despite his objections as to relevance.  Instead, he refused to do so.  One fact which clearly impacted Faller's deposition is that a related case, in which Faller was a party, was ongoing and discovery was being held in abeyance at the time of Faller's deposition.  Faller was reluctant to provide information that might impact the other pending litigation.  To the Court's knowledge, the present case is the only civil case that remains pending at this time.  Therefore, any other pending civil actions no longer serves as a hindrance to Faller's ability to answer.  Accordingly, the Court finds that Defendant's

motion to compel as to Faller's relevancy objections is granted.

## II. Fifth Amendment Privilege

Faller asserted his fifth amendment privilege against self-incrimination to a total of fifteen questions throughout the deposition, on the basis that the government was appealing Faller's federal sentence in Florida, Faller was challenging his conviction pursuant to 28 U.S.C. § 2255, and a felony indictment was pending against Faller in Russell Circuit Court.

Under the fifth amendment, "[n]o person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. AMEND. V. The fifth amendment privilege entitles a witness "not to answer questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *In re Morganroth*, 718 F.2d 161, 165 (6th Cir. 1983). "In order to properly invoke the privilege, one must demonstrate real dangers of incrimination." *Brennan v. C.I.R.*, 752 F.2d 187, 189 (6th Cir. 1984). The "danger" may not be "a mere imaginary, remote or speculative possibility of prosecution." *Morganroth*, 718 F.2d at 167. In addition, the privilege must be asserted as to each question; a blanket assertion will not do. *Id.*

The Court will now address Defendants' specific questions:

*What was the name of the call center? (Depo. p. 45)*

Faller's attorney answers this question by asserting the fifth amendment and stating that Faller cannot talk about the call center because the charges pending against him arise out of that employment situation. The Court finds that the question regarding the name of the call center does not elicit the kind of response that demonstrates a real danger of incrimination. Because Faller's fifth amendment privilege does not apply, Faller is required to respond to the question.

4

*Who was your supervisor? Who did you answer to when you had the call center? (Depo. p. 45)*

*When did the call center come to an end in terms of the day that it closed? (Depo. p. 46)*

*When did it open? (Depo. p. 46)*

*Why did you leave Augusta to move to Russell Springs? (Depo. p. 49)*

*The reason that you moved? (Depo. p. 49)*

*How did you know Charles Sweby? (Depo. p. 50)*

*So is he related to the call center? (Depo. p. 50)*

The Court is unaware of the pending charges against Faller and how such charges relate to the call center. Accordingly, it is difficult for the Court to ascertain whether Faller's responses to these questions would present a real danger of incrimination. At the same time, the Court fails to see how this evidence is relevant to the present civil case. For these reasons, Defendant and Faller may file written briefs *in camera* for the Court's review detailing why disclosure of this information is relevant to Defendant's case or subject to the fifth amendment privilege against self-incrimination. These briefs shall be filed within twenty-one days of the filing of this Memorandum Opinion and Order.

*[I]n what states have criminal charges been brought against you? (Depo. p. 104)*

*[W]ould you tell me all of the states wherein criminal charges of one kind or another have been brought against you? (Depo. p. 104)*

*[T]here is some type of appeal pending concerning the federal conviction in Florida. Can you tell me what court that appeal is pending in? (Depo. p. 105)*

*[A]re any matters pending in the Florida litigation? (Depo. p. 106)*

*Have you ever been charged with a criminal indictment or have any kind of charges been*

*brought against you in the state of Ohio? (Depo. p. 106)*

*Have any criminal charges ever been brought against you in the state of Georgia? (Depo. p. 106)*

*Are any criminal actions pending against you other than in Florida and in Kentucky, specifically Russell County and Adair County at this time? (Depo. p. 106)*

The Court cannot conceive of any way in which responding to the above stated questions would present a real danger of incrimination to Faller, as such information is public record. In addition, such information is relevant in that it is likely to lead to admissible impeachment evidence. *See* Fed. R. Evid. 609. Accordingly, Faller must respond to these questions.

### III. Attorney-Client Privilege/Work Product

Deponent Faller asserts attorney-client privilege and work product on behalf of Leon Grider several times throughout the deposition. According to Faller, he has served as a representative of the client, Mr. Grider, throughout dealings with a number of lawyers in regards to Mr. Grider's criminal cases. Faller also asserts that he has served as a representative of a lawyer in regards to Mr. Grider's criminal charges. Thus, Faller asserts Mr. Grider's attorney-client privilege under Kentucky Rules of Evidence 503. Under that Rule, a "representative of the client" is defined as:

    (A)    A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or
    (B)    Any employee or representative of the client who makes or receives a confidential communication:
        (i)    In the course and scope of his or her employment;
        (ii)    Concerning the subject matter of his or her employment; and
        (iii)    To effectuate legal representation for the client.

Ky. R. Evid. 503(a)(2). A "representative of a lawyer" is defined as "a person employed by the

lawyer to assist the lawyer in rendering professional legal services." Ky. R. Evid. 503(a)(4). Although it is unclear from the deposition transcript and briefing what relationship Faller has to Mr. Grider, none of the parties appear to challenge Faller's status as a representative of either Mr. Grider or one of Mr. Grider's lawyers.

Under Rule 503, a client may claim attorney-client privilege in order "to refuse to disclose or prevent from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client . . . ." Ky. R. Evid. 503(b), (c). "Claims of attorney-client privilege are narrowly construed because the privilege reduces the amount of information discoverable during the course of a lawsuit." *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)). "The privilege 'applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice.'" *Id.*

Faller first asserts attorney-client privilege on behalf of Mr. Grider after he is asked "And how do you charge the Griders? Do you charge by the hour spent?" Depo. Transcript, DN 49-3, p. 64. Faller responds that it depends and that providing an answer would get into things that are critical to Mr. Grider's defense. Following this response, Faller is asked about the types of things he does to earn fees from Mr. Grider, to which Faller's attorney again asserts the attorney-client privilege. Depo. Transcript, DN 49-3, p. 65-67. The Court lacks sufficient information to evaluate whether Mr. Grider's attorney-client privilege applies to the information sought by these questions. Faller shall submit for *in camera* review an explanation of why responding to these questions would reveal "communications necessary to obtain legal advice." This

7

explanation shall be filed with the Court within twenty-one days of the filing of this Memorandum Opinion and Order.

The next major issue with attorney-client privilege is in regard to the first telephone call that took place between Mr. Grider and Faller. Faller acknowledges that at the time he first spoke with Mr. Grider, he had no business or any other relationship with Mr. Grider. Depo. Transcript, DN 49-3, p. 69, 72. There is no assertion that at this time Faller was either a representative of Mr. Grider or a representative of one of Mr. Grider's attorneys. The attorney-client privilege as set out in Rule 503 does not protect communications between clients and third parties. *See* Ky. R. Evid. 503(b)(1)-(5). At the time of their first phone call, there was no relationship between Mr. Grider and Faller that would entitle these communications to protection. Furthermore, there is no evidence that the communications were "necessary to obtain legal advice." Accordingly, Faller may not assert Mr. Grider's privilege as to questions regarding their first phone call.

Faller next asserts the attorney-client privilege when he is asked about his communications with Mr. Grider the first time they met. Depo. Transcript, DN 49-3, p. 75. This occurred after they had spoken on the phone. It is unclear if Faller and Mr. Grider had developed a relationship at this point by which Faller would be considered his representative, although Faller acknowledges that Mr. Grider had not paid him anything at that time. Even so, there is no evidence that Mr. Grider was seeking legal advice at this time from Faller. Accordingly, the Court finds that Faller must answer questions in regards to his first in-person contact with Mr. Grider, or provide the Court with additional information *in camera* regarding whether Mr. Grider was seeking legal advice at that time. The same reasoning applies to Faller's

8

first conversation with Mrs. Grider. *See* Depo. Transcript, DN 49-3, p. 78.

Faller was then asked whether he had taken any notes following his meetings and conversations with the Griders. Depo. Transcript, DN 49-3, p. 79-80. Whether or not Faller took such notes is not a matter of privilege, and Faller is required to respond with a simple yes or no answer. However, the content of these notes may be subject to privilege. Should any such notes exist, Faller is directed to file a listing of these notes with the Court for *in camera* review. The log should be filed within twenty-one days of the filing of this Memorandum Opinion and Order, and should include enough information that the Court will be able to judge whether or not the notes are privileged.

The next question posed to Faller asks which cases he is working on for the Griders. Depo. Transcript, DN 49-3, p. 80. Faller asserts attorney-client privilege. The Court finds that Faller must respond to this question, as the identities of the cases is he is working on do not constitute communications "necessary to obtain legal advice." Faller is also asked when he was first retained or became an agent of the Griders, how many conversations he has had with Mr. or Mrs. Grider, and whether or not he was retained by the Griders to assist in their criminal and civil proceedings. Depo. Transcript, DN 49-3, p. 82-85. None of these questions seek the contents of confidential communications. For this reason, Faller must provide answers to these questions as well.

Faller is also questioned about a conversation he had with Ed Dove, who represents the Griders in this case. Depo. Transcript, DN 49-3, p. 84. Under Rule 503, such communications are protected, as the privilege may be asserted as to communications between a representative of the client and the client's lawyer. Ky. R. Evid. 503(b).

The next series of questions in the deposition deal with Faller's knowledge of the Grider Drug Store. Depo. Transcript, DN 49-3, p. 85. The Court finds that some of these questions may get into issues of attorney-client privilege. Faller shall submit for *in camera* review an explanation of why responding to these questions would reveal "communications necessary to obtain legal advice." This explanation shall be filed with the Court within twenty-one days of the filing of this Memorandum Opinion and Order.

Defense counsel also asks Faller whether he knows Phillip Grider and Leah Wilson. Depo. Transcript, DN 49-3, p. 86. Faller asserts that such information is privileged. Clearly whether Faller knows someone is not a confidential communication. However, Faller's response brief to the motion to compel indicates that Phillip Grider and Leah Wilson are related to the criminal charges pending against Faller. Therefore, this information may present fifth amendment issues. The inquiries continue to questioning about receiving compensation from these people or taking sworn statements of witnesses. Depo. Transcript, DN 49-3, p. 89-90. Faller's brief alleges that Defendants acted in bad faith by asking such questions when they knew of the potential criminal charges Faller was facing at the time of the deposition. Accordingly, Defendant and Faller may provide written briefs for the Court's review *in camera* detailing why disclosure of this information is relevant to Defendant's case or subject to the fifth amendment privilege against self-incrimination. This brief shall be filed within twenty-one days of the filing of this Memorandum Opinion and Order.

The next questions focus again on the fees that were paid to Faller by the Griders. Depo. Transcript, DN 49-3, p. 90. This issue has been previously addressed within this Memorandum Opinion.

Defense counsel also asks Faller if he is aware of any person who has stopped doing business with Grider Drug Store, and whether he knows if Mrs. Grider kept a diary or journal. Depo. Transcript, DN 49-3, p. 91. Faller asserts privilege as to both questions. The Court acknowledges that both questions seek information that could have been obtained through confidential communications. Therefore, Faller shall submit for *in camera* review an explanation of why responding to these questions would reveal "communications necessary to obtain legal advice."

Next, Defendant's attorney, Dave Nunery, asks a series of questions seek to find out if Faller has any information as to the allegations in the complaint, or if he is aware of various circumstances surrounding the Griders civil cases. *See* Depo. Transcript, DN 49-3, p. 92-101. Whether or not Faller has such information can generally be answered with a yes or no, and does not delve into the substance of the information known to Faller. Many of these questions, however, the Court would consider loaded questions, to which assertion of privilege may be appropriate. In addition, any further questioning on these matters is likely to lead to privileged material. The Court's lack of a factual basis as to Faller's privilege assertions prevents the Court from making proper determinations at this time. For the Court's clarity on these issues, Faller should either agree to answer these questions or submit for *in camera* review an explanation of why responding to specific questions asked by Mr. Nunery would reveal "communications necessary to obtain legal advice."

Finally, Faller pleads the work product doctrine as stated in Rule 26.02(3)(a) of the Kentucky Rules of Civil Procedure. This rule's counterpart is Federal Rule of Civil Procedure 26(b)(3). Both rules apply to the discovery of materials, such as "documents and tangible things

. . . prepared in anticipation of litigation or for trial . . . ." Fed. R. Civ. P. 26(b)(3). As defense counsel points out, no such material were requested during Faller's deposition. Howver, "the Supreme Court in *Hickman* made clear that disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions, interrogatories, and requests for admissions." *United States v. One Tract of Real Property*, 95 F.3d 422, 428 n. 10 (6th Cir. 1996) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).

Faller specifically asserts the work product doctrine on three occasions throughout the deposition. In the first instance, it is asserted in response to the question, "What types of things do you do . . . to earn these fees from Mr. Grider?" Depo. Transcript, DN 49-3, p. 65. Faller argues that such a question goes to mental impressions. "The test for whether a claim of work-product privilege is viable is 'whether, in light of the nature of the [intangible work product] and the factual situation in the particular case, the [information] can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Alexander v. F.B.I.*, 192 F.R.D. 12, 17 (D.D.C. 2000) (quoting *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 n. 42 (D.C. Cir. 1987)). The Court finds that the work product doctrine could apply to this question, but the Court lacks sufficient information at this time. Faller may address this issue in the same brief he files *in camera* with the Court addressing his assertion of attorney-client privilege to the same question.

The next instance in which Faller asserts work product doctrine is to questioning about Faller's first telephone conversation with Mr. Grider. Depo. Transcript, DN 49-3, p. 72. As the Court stated earlier, there is no evidence that Faller either represented Mr. Grider or was a representative of one of Mr. Grider's attorneys at that time, and thus Faller cannot assert

attorney-client privilege as to this communication. For the same reasons, the work product doctrine argument must fail as well.

Lastly, Faller asserts work product doctrine to the following question from Mr. Nunery: "Do you have any information as to whether or not the state police or Detective Hammond have made any threatening–had any threatening contacts with physicians who write–whose prescriptions might be filled at Grider Pharmacies?" Depo. Transcript, DN 49-3, p. 95. Faller asserts attorney-client privilege and work product. Faller may address his work product argument in more detail through the *in camera* brief to be filed with the Court as to the questions asked by Mr. Nunery.

### IV.     Sanctions

The Court will address the issue of sanctions following consideration of the additional briefs to be filed with the Court as to Faller's asserted privileges.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Compel is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Sanctions remains pending. The parties shall file briefs in compliance with this Memorandum Opinion within twenty-one days from the filing of this Order.