**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05-CV-137**

**LEON GRIDER and ANNA MAE GRIDER**                                      **PLAINTIFF**

v.

**CITY OF RUSSELL SPRINGS, BRIAN WALTERS,
CARLA GRIDER, JOE MICHAEL IRVIN,
SCOTT HAMMOND, and JAMIE ROGERS**                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Scott Hammond's Motion to Compel and for Sanctions (Docket #49). Interested Party James S. Faller II has responded (Docket #63). Defendant has replied (Docket #65). The Court issued a Memorandum Opinion and Order on November 12, 2010, granting in part and denying in part Defendant's motion (Docket #66). The Court directed the parties to file *in camera* briefs as to several issues and declined to address sanctions at that time. The parties have now filed briefs for the Court's consideration.

**BACKGROUND**

Plaintiffs Leon and Anna Mae Grider have sued Defendants for defamation, interference with the right to contract, intentional infliction of emotional distress, abuse of conduct, and violations of 42 U.S.C. §§ 1983 and 1985. This case was initiated by the Griders in 2005. The deposition of James S. Faller II ("Faller") was taken on August 28, 2006, as part of the parties' discovery process. Following Faller's deposition, Defendants filed a motion to compel, claiming Faller had wrongly asserted several objections and abused his privileges. Plaintiffs then filed a motion to stay discovery pending the resolution of criminal charges against Leon Grider related to the subject matter of this civil action. The Court granted that motion on November 17, 2006. The Court also vacated the pending motion to compel.

The Court held a telephone conference on February 25, 2010, in which the parties informed the Court that Leon Grider's criminal charges would soon be resolved. Accordingly, the Court lifted the stay in this case, and a new scheduling order was entered on April 27, 2010. On August 10, 2010, Defendant Scott Hammond filed the present motion to compel and motion for sanctions based on Faller's August 28, 2006, deposition. The Court issued a Memorandum Opinion and Order on these motions on November 12, 2010. That opinion left open several issues, and the parties were invited to file *in camera* briefs for the Court's consideration. Having read these briefs, the Court now considers the remaining privilege issues and sanctions.

## STANDARD

Determining "the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. Pro. 37(a)(1). In doing so, "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Motions to compel discovery responses are authorized where a party fails to answer a question asked under Rule 30 or 31. Fed. R. Civ. Pro. 37(a)(3)(B)(I).

Rule 30 permits a deponent to object during a deposition, but "the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). An objection must be "nonargumentative and nonsuggestive." *Id.* A deponent may choose not to respond "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* Under Rule 30(d)(3), a deponent may move to terminate or limit the

deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent . . . ." Fed. R. Civ. P. 30(d)(3)(A).

**DISCUSSION**

**I.     Fifth Amendment Privilege**

Faller asserted his fifth amendment privilege against self-incrimination to a total of fifteen questions throughout the deposition, on the basis that the government was appealing Faller's federal sentence in Florida, Faller was challenging his conviction pursuant to 28 U.S.C. § 2255, and a felony indictment was pending against Faller in Russell Circuit Court. The Court ordered Faller to respond to eight of these questions and to file a written brief *in camera* as to the remaining questions. Faller has filed his brief, which also requests that the Court reconsider its prior rulings. The Court also invited Defendants to file an *in camera* brief explaining how the evidence sought is relevant to the present civil case. Defendant Scott Hammond has filed an *in camera* brief with the Court.

*A.     Information Related to the Call Center*

Defendants asked several questions relating to a call center during Faller's deposition, including the name of the call center and Faller's relationship to it.[1] Upon review of the parties' *in camera* briefs, the Court finds that Defendants have failed to provide an adequate explanation as to why disclosure of this information is necessary or relevant. In addition, the parties are aware that Faller is currently facing criminal charges. Accordingly, the Court holds that Faller shall not be required to answer any questions relating to the call center, including the name of the

---

[1] The specific questions are noted in the Court's November 12, 2010, Memorandum Opinion and Order. *See* DN 66, p. 4-5.

call center.[2]

      *B.      Faller's Criminal Charges*

Next, Faller seeks to assert his fifth amendment privilege against self-incrimination as to his prior criminal charges. In its prior ruling, the Court held that Faller must answer these questions because his prior charges are relevant for impeachment purposes and public record. *See* Mem. Op. & Order, DN 66, p. 6. Faller has asked the Court to reconsider its ruling. Upon review of the parties' *in camera* briefs, the Court reverses its prior decision and holds that Faller is not required to testify to these matters. As such information is public record, Defendants may discover this information without Faller's testimony. Further, this information could have implications for Faller in his upcoming criminal trial.

## II.    Attorney-Client Privilege/Work Product

The Court noted in its previous Memorandum Opinion and Order that Deponent Faller asserted attorney-client privilege and work product on behalf of Leon Grider several times throughout the deposition. Mem. Op. & Order, DN 66, p. 6.

> According to Faller, he has served as a representative of the client, Mr. Grider, throughout dealings with a number of lawyers in regards to Mr. Grider's criminal cases. Faller also asserts that he has served as a representative of a lawyer in regards to Mr. Grider's criminal charges. Thus, Faller asserts Mr. Grider's attorney-client privilege under Kentucky Rules of Evidence 503.
>
> . . .
>
> Although it is unclear from the deposition transcript and briefing what relationship Faller has to Mr. Grider, none of the parties appear to challenge Faller's status as a representative of either Mr. Grider or one of Mr. Grider's lawyers.

---

[2]This reverses the Court's prior opinion that Faller must disclose the name of the call center. *See* Mem. Op. & Order, DN 66, p. 4.

DN 66, p. 6-7. The Court invited additional briefing, *in camera*, as to fees charged by the Griders for Faller's services, Faller's first meetings with Leon and Anna Mae Grider, the content of Faller's notes taken following his meetings with the Griders, Faller's knowledge of Grider Drug Store, whether Faller knows Phillip Grider and Leah Wilson, if Faller is aware of anyone who stopped doing business with Grider Drug Store, if Faller is aware that Mrs. Grider kept a diary or journal, and Faller's knowledge of the allegations in the Complaint. Faller's *in camera* brief also asks the Court to reconsider its rulings on the first telephone call between Leon Grider and Faller. Defendant Scott Hammond's *in camera* brief addresses the issue of whether Faller had contact with Leah Wilson and Philip Grider.

     A.     *Faller's Fee Arrangement with the Griders*

The Court invited Faller to provide an explanation of why responding to questions regarding his fee arrangement with the Griders would reveal "communications necessary to obtain legal advice." After reviewing Faller's *in camera* brief, the Court finds that Faller has failed to demonstrate how responding to questions such as how he charges the Griders for work performed would delve into communications concerning legal advice. Therefore, Faller must respond to these questions. As to the specific services Faller provides for the Griders, Defendants may inquire generally as to these services. Faller may properly assert the attorney-client privilege, however, should this line of questioning begin to delve into more specific areas such as Faller's discussions with the Griders regarding his services and any issues that might address Faller's work product.

     B.     *First Telephone Call with Leon Grider*

Faller asks the Court to reconsider its ruling on the issue of Faller's first telephone call

with Leon Grider. In the Court's original Memorandum Opinion and Order, the Court held that the attorney-client privilege did not apply because there was no evidence that any relationship between Faller and Mr. Grider existed at that time. After further review of Faller's *in camera* brief, the Court finds that Faller has presented additional evidence which supports his assertion of the attorney-client privilege as to this matter. Accordingly, the Court reverses its prior opinion as to this issue.

   C. *Faller's First Meetings with Leon and Anna Mae Grider*

In the Court's original opinion, it was unclear if Faller and Mr. Grider had developed a relationship or that Mr. Grider was seeking legal advice from Faller at the time of their first meeting. A review of Faller's *in camera* brief reveals that the attorney-client privilege applies to the communications shared between Leon Grider and Faller during this first meeting. In addition, Faller's brief provides further information about his first meeting with Mrs. Grider. Again, the Court finds that the attorney-client privilege applies here.

   D. *Faller's Notes Following Meetings with the Griders*

At Faller's deposition, he was asked whether he had taken any notes following his meetings and conversations with the Griders. The Court held that Faller is required to respond with a simple yes or no answer, and then to file a privilege log as to any existing notes. Faller's *in camera* brief indicates that no notes regarding his meetings with only the Griders exist.

   E. *Faller's Knowledge of Grider Drug Store*

As to Faller's knowledge of the Grider Drug Store, the Court finds that Faller's *in camera* brief presents sufficient evidence indicating that his knowledge of the store was gained through confidential communications in his role as a representative. Accordingly, the privilege

6

applies.

   F.   *Phillip Grider and Leah Wilson*

Defense counsel also asks Faller whether he knows Phillip Grider and Leah Wilson. The Court noted in its original Memorandum Opinion and Order that, based upon Faller's representations to the Court, providing this information could present fifth amendment issues. Both parties responded to this issue in their *in camera* briefs. The Court finds that, because of the nature of Faller's alleged interactions with these two individuals, the fifth amendment privilege applies.

   G.   *Faller's Knowledge of Persons Who Stopped Doing Business with Grider Drug and Whether Mrs. Grider Kept a Diary or Journal*

As noted in the Court's original Memorandum Opinion and Order, Faller asserted attorney-client privilege when asked if he is aware of any person who has stopped doing business with Grider Drug Store, and whether he knows if Mrs. Grider kept a diary or journal. After reviewing Faller's *in camera* brief, the Court finds that both questions seek information to which Faller is entitled to assert attorney-client privilege on behalf of the Griders.

   H.   *Faller's Knowledge as to the Allegations in the Complaint*

Finally, Faller was asked a series of questions addressing his awareness of various circumstances surrounding the Griders' civil cases. The Court noted:

> Whether or not Faller has such information can generally be answered with a yes or no, and does not delve into the substance of the information known to Faller. Many of these questions, however, the Court would consider loaded questions, to which assertion of privilege may be appropriate. In addition, any further questioning on these matters is likely to lead to privileged material.

Mem. Op. & Order, DN 66, p. 11. Upon further consideration and review of Faller's *in camera*

7

brief, the Court finds that the attorney-client privilege applies. Although many of Mr. Nunnery's questions were framed as yes or no answers, the questions are clearly intended to get into matters which Faller gained knowledge of by virtue of his representative capacity.

## III.     Sanctions

The Court having reviewed this matter determines that sanctions are unwarranted in this case, as many of Faller's asserted privileges had merit. Accordingly, the motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Compel (DN 49) is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Sanctions (DN 49) is DENIED.